UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

ENA MAE BACQUIE                          :

               Plaintiff,     :

       -against-                        :

LIBERTY MUTUAL INSURANCE CO., LIBERTY    :
LIFE ASSURANCE CO. OF BOSTON

               Defendants.    :

----------------------------------------X

**ECF CASE**

**05 CIV. 6886**

**JUDGE CONNER**

**COMPLAINT**

## JURISDICTION AND VENUE

1. This action arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1001 <u>et. seq.</u>, This Court has jurisdiction under 28 U.S.C. Sec. 1331 and 28 U.S.C. Section 1332.

2. Venue is proper in the Southern District of New York according to 28 U.S.C. 1391 because the defendant conducts business there and the events which rise to the claim occurred in the Southern District of New York.

## THE PARTIES

3. Plaintiff, Ena Mae Bacquie, was employed as a Senior Case Manager II by defendant Liberty Mutual Ins. Co. from January 2000 to April 2000.

4. Plaintiff worked at defendant's location in Tarrytown, New York, located in the Southern District of New York.

5. As a term and condition of her employment, plaintiff was required to pay a premium for a Group Disability Income Policy ("the Policy").

6. Defendant employer, Liberty Mutual Insurance Company is the Sponsor of the Policy.

7. During her employment, plaintiff was a participant/beneficiary of this Policy.

## COUNT I.

8. Plaintiff repeats, realleges, and reincorporates all previous allegations as though fully set forth herein.

9. Plaintiff suffered from unexplained fainting spell and a gynecological order in April 2000.

10. Subsequently, she was treated for pelvic pain and hemorrhaging.

11. Dr. Goldberg indicated that plaintiff suffered seizures.

12. Dr. Lauersen performed surgery on plaintiff in June 2000.

13. On July 18, 2000, plaintiff suffered a seizure and was admitted to Mt. Sinai Hospital.

14. She was then diagnosed with Addison's disease.

15. In January 2001, Liberty's own physician noted plaintiff had symptoms of fatigue from Addison's disease and was suffering depression from her medications.

16. In March 2001, Dr. Viennas, a treating physician, diagnosed plaintiff with "weakness, hypotension, seizure disorder, [and] arthritis."

17. Subsequently, a Nurse Case Manager for defendant Liberty noted that she was "leaning towards" a physical disability of Sjogren's disease with complications of Addison's and that plaintiff's depression was secondary to the medications.

18. In June 2001, Dr. O'Malley, another Liberty physician, determined that he could not exclude the depression as being secondary to medications and that plaintiff's medications were known to cause depression.

19. Dr. O'Mally determined that plaintiff's original limitations related to gynecological problems and that she subsequently developed problems with grand mal seizures.

20. No Liberty physician or medical professional ever diagnosed plaintiff as suffering from schizophrenia.

21. In October 2001, Dr. Hurwitz characterized plaintiff's depression as secondary to the Addison's disease.

22. In November 2001, Dr. Finkel diagnosed plaintiff's seizures as emanating from her Epilepsy.

23. In March 2002, defendant performed an IME on plaintiff. The IME report indicated that plaintiff suffered from Lupus.

24. On an internal report in March 2002, Liberty designated plaintiff's restrictions as "weakness and fatigue."

25. In April 2002, Liberty designated Lupus as plaintiff's primary diagnosis and Sjogren's as her secondary diagnosis.

26. In an internal email, Liberty noted that plaintiff, a former Claims Examiner, was "overly familiar with the claims process."

27. In January 2004, Liberty listed Lupus as plaintiff's primary diagnosis.

28. On May 11, 2001, the United States Social Security Administration awarded disability benefits to plaintiff based on the diagnosis of Schizophrenia.

29. Plaintiff's SSA award was retroactive to April 2000.

30. Liberty never diagnosed plaintiff as having schizophrenia.

31. Liberty diagnosed plaintiff as having depression secondary to medications which were prescribed to her after August 2000.

32. Consequently, plaintiff's depression could not have occurred in April 2000.

33. Schizophrenia has a genetic cause, or vulnerability, and is not secondary to other disorders.

34. In addition, schizophrenia profoundly disrupts cognition and emotion and affects a persons' language, thought, perception, affect, and sense of self.

35. Liberty never diagnosed plaintiff as suffering from schizophrenia.

36. Liberty never diagnosed plaintiff as having the symptoms of schizophrenia – loss of emotional range, difficulty interacting with others, hallucinations and delusions.

37. Instead, Liberty diagnosed a variety of physical illnesses and depression secondary to medication.

38. Defendant's policy provides that its benefit is offset by certain types of "other income," including, but not limited to, Social Security Disability benefits.

39. Defendant's policy provides that these "benefits from other income . . . must be payable as a result of the same Disability for which Liberty pays a benefit."

40. The Policy defines "Disability" after 18 months of benefits as "the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity."

41. The Social Security Administration found plaintiff to be disabled, and unable to perform the duties of any occupation, due to schizophrenia, dating back to April 2000.

42. Liberty Mutual never ruled that plaintiff suffered from schizophrenia.

43. Consequently, plaintiff's benefit should not have been offset by her "other income" from Social Security Disability.

44. On or about February 2001, Liberty Mutual notified plaintiff that it would offset her disability payment by the other income she earned from Social Security Disability.

45. Plaintiff appealed this determination by letter dated May 21, 2004.

46. Defendant denied plaintiff's appeal by letter dated June 3, 2004.

47. After a subsequent appeal on August 3, 2004, defendant again denied plaintiff's appeal by letter dated August 13, 2004.

48. Defendant's denial of plaintiff's claim that the LTD benefit should not be offset by her Social Security benefits was arbitrary and capricious, and otherwise in violation of ERISA, and defendants breached their fiduciary duty and violated ERISA by denying plaintiff's claim for long-term disability benefits.

WHEREFORE, the plaintiff demands judgment against the defendant and prays:

(a) That this court find that the defendants acted arbitrarily and capriciously, violated their fiduciary duty, and violated ERISA and annul the determination applying an offset to plaintiff's Social Security Disability income retroactive to defendant's decision to offset plaintiff's social security disability income, along with prejudgment interest, counsel fees and costs;

(b) That this court award the plaintiff such other and further relief as may be just and equitable.

Dated:     Mineola, New York
           July 15, 2005

                                    Yours, etc.,

                                    _____
                                    Raymond Nardo (4773)
                                    Attorney for
                                    Plaintiff
                                    129 Third Street
                                    Mineola, NY 11501
                                    (516)248-2121