RAYMOND NARDO, Esq.
Attorney for Plaintiff
129 Third Street
Mineola, NY 11501
(516)248-2121


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X

ENA MAE BACQUIE                        :

                      Plaintiff,    :
                                                   **PLAINTIFF'S RULE 56**
            -against-        :    **STATEMENT**

LIBERTY MUTUAL INSURANCE CO., LIBERTY  :    **05-CV-06886 (WCC)**
LIFE ASSURANCE CO. OF BOSTON

                      Defendants.   :

--------------------------------------X

The plaintiff, ENA MAE BACQUIE, by counsel, sets forth the following material relevant undisputed facts pursuant to Rule 56 of the FRCP:

    1.    Plaintiff commenced employment as a Claims Examiner for Liberty Mutual Insurance Company in January 2000. Her first leave was on or about April 11, 2000 (150, 1372)[1].

    2.    Plaintiff then returned to work in May, 2000 (1372).

    3.    As per Liberty's records, plaintiff left work again on May 31, 2000 (148). She then returned to work on October 30, 2000, and reopened her disability case again after leaving work on November 6, 2000 (148).

    4.    Her last date of work, as identified by Liberty Mutual,

---

[1] All Citations, unless otherwise noted are to the Bates-stamped page number of the Administrative Record.

was November 6, 2000 (1156).

5. As a condition of her employment, plaintiff was <u>required</u> to purchase disability insurance from defendant and to pay premiums (Exhibit 1 to Nardo Declaration).

6. Plaintiff was a participant or beneficiary of a policy issued by Liberty Life Assurance Company of Boston (1-30).

7. According to the policy, "Disability" or "Disabled" mean "a person who is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity" (7).

8. According to the policy, "'Sickness' means illness, disease, pregnancy, or complications of pregnancy" (8).

9. The Policy also limits the Benefit for Disability due to Mental Illness to 18 months, subject to certain limitations which do not apply to the present case (16).

10. According to the Policy, "'Mental Illness' means mental, nervous or emotional diseases or disorders of any type" (16).

11. The Policy includes Social Security Act benefits as "Benefits from Other Income" (17).

12. According to the Policy, "These Benefits from Other Income, except Retirement Benefits, must be payable as a result of the same Disability for which Liberty pays a benefit" in order to be offset by Liberty's disability benefit (17).

13. Dr. Neils Larsen completed a Disability Proof of Claim on June 2, 2000 for pelvic pain, pain in abdomen, and bleeding (285).

14. Dr. Stephen L. Sowinski completed a "Restrictions Form" for defendants on August 9, 2000 indicating that plaintiff's diagnoses of Syncope, Addison's Disease, Orthostatic Hypotension, and Sjogren's Disease (1235).

15. Plaintiff received an award from Social Security on May 11, 2001 indicating that she was disabled as of April 23, 2000 and that her first month of entitlement was October 2000 (1084-1087).

16. On May 16, 2001, Liberty's file indicates that Barbara Desjardins was "leaning towards a diagnosis of Sjogren's diseases coupled with secondary Addison's. She feels the depression is resultant from the meds ee is taking (cortisone)" (97).

17. On November 14, 2001, Liberty noted the following: "CLMT HAS MULTIPLE DIAGNOSES: SEIZURE DISORDER, HYPOTENSION, FATIGUE, SJOGREN'S SYNDROME, SLE, RHEUMATOID ARTHRITIS, ADRENAL INSUFFICIENCY, OTEOPENIA, DEPRESSION AND PANIC DISORDER" (68).

18. Dr. Jill T. Buyon, M.D. examined plaintiff and prepared an IME report at the request of Liberty(565-572).  In this report, dated March 19, 2002, Dr. Buyon confirmed that plaintiff has Lupus (SLE) and that "the patient's disease is real" (572).

19. On April 5, 2002, Liberty changed its diagnosis based on its own IME report to the primary diagnosis of Lupus and secondary diagnosis of Sjogren's syndrome.  This changed the type of claim to a physical "sickness" (48).

20. The mental illness limitation of 18 months no longer applied after this change in diagnosis.

21. On May 31, 2002, Liberty's Claim File noted the following: "**ATTORNEY REPRESENTATION/**CLAIMANT CONTROLS ALL MEDICAL INFORMATION RECEIVED ON CLAIM/**CLAIMANT IS OVERLY FAMILIAR WITH CLAIM PROCESS AND MEDICAL/INSURANCE TERMINOLOGY (WAS A CLAIMS MANAGER) (43).

22. On or about June 18, 2002, Nurse Barbara Desjardins wrote a "Final Case Summary" in which she confirmed the diagnosis of Lupus, based on Liberty's Independent Medical Examination (42).

23. On May 21, 2004 Plaintiff received a letter from SSA clarifying her previous award, which she forwarded to Liberty.  The letter indicated that her entitlement date was October 2000 with a date of onset of April 23,

2000. The SSA diagnosed 2950 (Schizophrenia) and 3000 (Anxiety Disorder) (775).

24. Plaintiff appealed Liberty Mutual's ruling that her SSD benefit was the "same disability" as the long-term disability benefit paid by Liberty Mutual (226-586).

25. Liberty denied plaintiff's appeal by letter dated August 25, 2004 (187-190; 218-221) (Denial Letter).

26. In its denial letter, Liberty noted that "[t]he policy under which you are covered states that your receipt of SSD benefits must be payable as a result of the same <u>disability</u>, not diagnosis, for which Liberty pays a benefit" (193).

27. Liberty sent authorizations to plaintiff to obtain her medical records. These authorizations expressly authorize the release of plaintiff's Social Security records (<u>e.g.</u>, 203, 778, 853 (indicating authorizations were sent to 12 entities); therefore, Liberty was capable of obtaining plaintiff's SSD file.

28. During the pendency of plaintiff's claim, defendants engaged in clandestine surveillance of plaintiff on numerous occasions(40, 49, 55, 574, 909-914, 969-977).

29. On a form to Elite Physicians, a Medical Review Company, Liberty's Nurse, Barbara DesJardins, completed a form asking that the Medical Review "Clarify impairment." The form listed the following diagnoses: Fatigue, Sjogren's syndrome, adrenal insufficiency,

epilepsy, rheumatoid arthritis, depression, SLE, eye pain (563).

30. Liberty never diagnosed schizophrenia as one of plaintiff's illnesses or disabilities (Exhibit 2 to Nardo Declaration, par's 20, 30, 35, 36).

31. Liberty never paid plaintiff disability benefits due to schizophrenia.

32. Plaintiff's disability benefit from Liberty is 70% of her salary of $53,000, which totals $1,426.92 on a **bi-weekly** basis.

33. Plaintiff receives the following benefit from SSA: $1,176 for her own benefit and $588 for her children's benefit, which totals $1,764 per month (1084-87).

34. Liberty has reduced its disability benefit paid to plaintiff in the amount of $1,764 per month from April 2000 through present, solely because it alleges that plaintiff's SSD benefit is the "same disability" as that identified by Liberty.

35. Under the policy, the SSA's diagnosis of schizophrenia is not the "same disability" as those identified by Liberty.

36. Liberty's decision has cost, and continues to cost, plaintiff $1,764 in benefits per month for each month from April 2000 through present.

LAW OFFICE OF
RAYMOND NARDO

Dated:     December 30, 2005
           Mineola, NY

                                        _____
                                        RAYMOND NARDO (RN 4773)
                                        Attorney for Plaintiff
                                        129 Third Street
                                        Mineola, NY 11501
                                        (516)248-2121

TO:   Virginia T. Shea, Esq.
      Chorpenning Good Carlet & Garrison
      1135 Clifton Ave.
      Clifton, NJ 07013

**CERTIFICATE OF SERVICE**

I certify that on December 30, 2005, I, Raymond Nardo, attorney for plaintiff:

served the enclosed:

    PLAINTIFF'S RULE 56 STATEMENT

by ECF and regular mail, first class, on counsel for the defendant located at:

    Michael J. Zaretsky, Esq
    Virginia T. Shea, Esq.
    Chorpenning Good Carlet & Garrison
    1135 Clifton Ave.
    Clifton, NJ 07013

_____        _____
   DATE                    Counsel for the Plaintiff

LAW OFFICE OF
RAYMOND NARDO